First case this morning is State Farm v. Manning. It's case number 4090570 for the appellant Dominique Seymour for the appellee Amy Jackson. I want to announce to counsel that Justice Steigman cannot be here today. He will listen to the tapes of these orals and certainly has access to the record and to the briefs. And will take part in the final decision although he can't be here today. Ms. Seymour. May it please the court. Counsel. The trial court's finding in this case that State Farm Fire had a duty to offend should be reversed because the underlying complaint that's at issue in this case does not allege property damages as that term is defined in the policies. Further, the underlying allegation or the complaint does not allege an occurrence and it's also specifically excluded. The primary error in the trial court's decision however was in the finding that the underlying complaint alleges property damages pursuant to the terms of the policy. State Farm Fire has a duty to defend the Mannings and the underlying action if the underlying action alleges property damages resulting from an occurrence. There are two policies at issue in this case. One is a homeowner's policy. The second is a premises and personal liability policy. Both contain very similar definitions of the term property damage and the homeowner's policy defines property damage as physical damage to or destruction of tangible property including loss of use of this property. The premises personal liability contains an almost identical definition. The underlying action in this case does not allege property damages because they do not allege any physical damage to or destruction of any tangible property. Contrary to the defendant's arguments in the trial court and on appeal, both of these definitions are clear and unambiguous and they both require that there be physical injury or physical damage to or destruction of tangible property in order for any loss of use of property to be considered. The proofs, who are the plaintiffs in the underlying action, do not allege any physical destruction or damage to any tangible property. Rather, their allegations and the theory that they've pled in their complaint is one for tortious interference with a prospective economic advantage. And all of the damages they actually allege are essentially economic damages resulting from that failed business relationship. In the trial court, the defendants argued that the definition of property damages included loss of use of property without any accompanying physical damage or destruction. And this decision is actually, and this issue has been considered by the 1st District and more recently the 3rd District appellate courts in Illinois. And State Farm urges this court to adopt a similar reasoning and find that the definitions requires physical damage to or destruction of tangible property before there can be any coverage for loss of use of tangible property. In the 1st District, the decision of Mootloo v. State Farm Fire considered this issue and it was addressing an almost identical definition of property damage. And at that time, there were no other Illinois decisions on the case, so they referred to some cases from outside of the state of Illinois. And the reason that the definition was upheld in Mootloo as requiring accompanying physical damage before there could be any loss of use coverage was because the court found that the definition was not ambiguous. In this case, the trial court in its findings doesn't find any ambiguity. Rather, the trial court says at one point, I think that there could be, some of these allegations could fall within the definition of property damage. But in order to... Did he specify what allegations? No, he did not. He basically said, I've read the definition of property damage. I think some of the things that are alleged could be considered property damage. He said also, I think some could not be considered. But he doesn't specifically find any ambiguity. And I think the error, if it occurred, was there was a lot of argument in the trial court about construing the policy against the insurer in favor of the insured. But as the first district pointed out in the Mootloo decision, before you construe the policy term against the insurer, there has to first be an ambiguity. And in the definitions that are in these policies, there really isn't an ambiguity. And the Mootloo court actually considered that there was no ambiguity. And the reason being that in order to adopt the defendant's interpretation, you essentially have to ignore the terms including and the term this and the definition of property damages. And a good analysis was actually cited by the first district in the Mootloo decision, which actually came from a Wisconsin decision in the case of Ehlers versus Johnson. And in looking at this definition, they talk about the loss of use clauses introduced by the verb including. And then looking at the ordinary dictionary definition of including means to take in or compromise as part of a whole. As the Ehlers court pointed out, in order to adopt the defendant's interpretation, the definition would effectively read physical injury to tangible property, including non-physical injury. And there was actually, many years ago, a change in definitions and policies in property damage. Originally, the term physical was not part of the definition. It often just included injury to or damage to tangible property. And there were a number of cases or some cases that at least interpreted that to where it didn't require any actual physical alteration or destruction of any property. That was changed, I think, around 1973 in a lot of the CGL policies. And the term physical was then used as part of the definition. And the Supreme Court actually addressed that issue, which is not the issue in this case, but it talked about what physical meant. And in order to suffer physical damage, there has to be some alteration in appearance or shape or color or other material dimensions. Now, you don't ask that this go back to the trial court because there is an issue of fact, do you? No, Your Honor. We've asserted that the underlying allegations, when you look at the allegations of the complaint, they don't allege property damages. And unless they allege property damages resulting from an occurrence, but primarily property damages at this point, then there is no duty to defend. There were cross motions, essentially, for summary judgment in the trial court. So the question of whether there's property damage is one of law, not fact? The interpretation of the insurance policy is one of law. And the allegations, basically what's at issue is whether loss of use, as the defendants urge that the plaintiffs in the underlying case are alleging, without any accompanying physical damage or destruction, is part of the definition of property damages in the policies. I don't think there's any question that there is no alleged physical damage to or destruction of property by the booths in the underlying complaint. If you look at the complaint, all of the allegations that there are the damages that they're asserting are loss of the value of selling the property, loss of the economic value of some fertilizer that would have come from a swine production facility, basically loss of appreciation in value of property that they would have been able to purchase had they been able to consecrate this original agreement. The similar decision that was reached in the first case was also reached more recently in the Rock v. State Farm Fire case. And again, in looking at the definition of property damages, the Rock court found that the definition was susceptible to only one reasonable interpretation whenever you read it. Whenever the phrase refers to including loss of use of this property, this property refers back to the physically damaged or destroyed property. And in this case, there are simply no allegations that there was any physical damage to or destruction of property. Rather, as the defendants argue, they argue there's an allegation of loss of use of tangible property. It's our position they haven't even alleged loss of use of tangible property. Rather, all they've alleged are economic damages resulting from the failed business relationship. And it's our position that because the underlying allegation does not allege property damages, that the court erred in finding that State Farm Fire owed a duty to defend. And we would ask that that decision be reversed and that the court find that, in fact, State Farm Fire does not have a duty to defend. In addition to the underlying complaint not alleging property damages, we also assert that they did not allege an occurrence. Occurrence is defined in the policy as an accident including exposure to conditions which results in property damage. Accident isn't defined in the policies, but there's kind of a common, understood definition of accident that I'm sure the court is probably familiar with. And the natural and ordinary consequences of an act or what should be expected is not accidental, even if the party didn't specifically intend that particular result. If you look at the underlying allegations in the complaint, there's only one theory pled. And that is an intentional act. And every allegation in there is that the defendants acted with the intent and with the specific expectation to interfere with this agreement that the booth had with the gentleman by the name of Jack Kirk to basically sell some property and get some additional economic benefits from that sale. And there's nothing in the allegations that suggests that anything was accidental or unforeseen or anything that would not have been expected. In addition, even if there were alleged property damages, which we assert there isn't or an occurrence, there's a specific exclusion in the policy for damages that are alleged to have, that were either expected or intended by the insured. And again, looking at the underlying allegations of the complaint, as I said, every allegation of every action is that the defendants acted with intent and with specific expectations to interfere with this business relationship that the booth had. The defendants argued in the trial court that because they alleged an affirmative defense that they didn't know of the business relationship or the prospective business relationship and that they acted with legal justification in erecting this gate on their property, that it's their position that that actually, because it shows at most they acted negligently, that it takes the allegations out from under this exclusion for intentional or expected acts. But this, the allegations of the affirmative defense don't actually do that. It's different from cases where, for example, you have an allegation of intentional acts such as assault or battery and the insured pleads an affirmative defense such as the self-defense, which is often an exception to that very exclusion. That's not the case here. The fact that the only theory of recovery pled by the booths in the underlying complaint is one that requires them... Is it a logical extension of your argument that if the booths had alleged negligence in building the fence, putting the fence up, then State Farm would have to defend? If they had maybe alleged some sort of cause of action, they can't allege a negligent interference with a prospective economic advantage. That's under the cases we cited in our briefs. That's a specific intentional tort that requires proof that they knew of the business relationship. Negligent or accidental or fortuitous interference with that business relationship would essentially negate their cause of action. I don't know if there's some cause of action they might have been able to plead that could have alleged negligence, in which case we'd be looking at a different set of allegations and potentially there could have been. But the fact of the matter is they've only pled this one theory. And in order for them to prove their theory and succeed, they're going to prove that there's no coverage because they have to prove that the defendants acted with this intent to interfere with that business relationship. And because of that, then the claim is specifically excluded by the policy. But primarily, I think the most glaring error in the trial court's ruling was the finding that there was an allegation of property damages. Because the court did not find any ambiguity. In fact, there isn't any ambiguity in this definition. Giving the definition of plain and ordinary reading requires that there be a physical destruction of, or physical damage to, or destruction of tangible property. The underlying complaint simply does not make any allegations to that effect, and they simply are seeking these economic losses from this lost business relationship. And we would ask that the court reverse the trial court's ruling, and specifically find that State Farm Fire did not have a duty to defend the Mannings in the underlying action. And therefore, since there's no duty to defend, there'd also be no duty to identify. Thank you. Thank you, counsel. What is your theory of recovery? Well, the theory of recovery that's been advanced by the booths in the underlying action is one of an intentional interference. On behalf of the Mannings, we have raised a defense to that, and asked the trial court to consider that, in fact, this was not an intentional interference, but was, at worst, negligent action on the part of the Mannings in constructing this gate. It was also action, as we have alleged, that was taken justifiably relying upon the... Can there be a recovery under a negligent action? For an interference with an economic interest, or potential economic interest, it has to be an intentional interference. What I think the trial court was recognizing is that there was a potential, given the allegations... Let me step back. Judge Roseberry, the judge at the trial level, was very familiar with the parties, with the facts, and how this litigation came to be. This was not the first litigation between the Mannings and the booths. There was a prior suit between the Mannings and the booths regarding this very gate and this very roadway, and Judge Roseberry was the judge in that case as well. As we argue to the trial court, and as we've submitted in our brief before this court, it's appropriate for Judge Roseberry to consider not only the allegations, not only the particular words or titles given to the cause of action by the plaintiff in the underlying suit, but to consider other allegations and other known facts that are alleged regarding the circumstance as a whole. And Judge Roseberry had all of that knowledge from the pleadings that were before him in this case, and from his knowledge of the relationship and the history of these parties as it came to be presented to him in this case. Do you agree that the interpretation of the insurance policy is one of law and not of fact? Absolutely. There's no question that the law in Illinois, for a long time, has established that the question of interpreting an insurance policy is a matter of law. There's no question that this court can consider the trial court's decision utilizing de novo review. If I understood your opponent correctly, she indicated you do not allege property damage. The State Farm has taken issue with the finding of the trial court that there is a potential in the underlying action for property damage, as defined in the policy, to be proven. And that's essentially what Judge Roseberry found. We believe, and what we have submitted in our brief to this court, and we'll submit to you here this morning, that the interpretation of the property damage definition in the policy itself is open to more than one reasonable interpretation. Longstanding case law in Illinois regarding the interpretation and construction of insurance policies dictates that when there is an ambiguity, when there is a provision in an insurance policy that is susceptible to more than one reasonable interpretation, then the reviewing court must, and the word is must. There's no discretion there. The reviewing court must interpret that provision narrowly against the drafter of the provision  There has been, not only in Illinois, as Ms. Seymour correctly pointed out, but in other states, litigation regarding this definition of property damage. State Farm would argue that you should interpret this to mean property damage including loss of use, but only if there is an accompanying physical or tangible damage to the property. The definition of property damage, as stated in the State Farm policy, is open to more than that interpretation. We have property damage that is defined as physical damage to property, and it also includes loss of use of that property. And what is alleged in the underlying lawsuit is that because this gate was constructed, the booths lost access, lost use to their property, and as a result suffered a decrease in the fair market value of their property, in addition to other damages. Now whether those other damages... How did they lose access? What they have alleged is that they had no other access to their property, but the property was not landlocked. And this kind of gets us into the idea of an occurrence and whether the foreseeability of placing a gate on the manning property would prevent the booths from accessing their property. The mannings did not reasonably foresee or intend that the booths would no longer be able to access their property. All the mannings intended to do was erect a gate on their own property. The booths had access around the remaining of their property and could get to their property in that way. There was no intention that they lose access. But counsel, this is a one count complaint, correct? Correct. And the one count alleges an intentional tort. Correct. And coverage for an intentional tort is excluded under both of the policies. Coverage for an intentional tort, there is that exclusion in the policies. However, there is an exception to that. And I believe we look at a case that was cited in State Farm's reply. There's an exception for coverage of an intentional tort? There is a potential. And this is what I think Judge Roseberry recognized. There's a potential based on the affirmative allegations of the mannings here that this was not an intentional act. That what they did was at worst somehow a negligent erection of the booths. I understand, but how does that get us past that the booths allege it's an intentional act? Because the case law directs the reviewing court, the trial court, and the reviewing court to look beyond the allegations of the complaint. It gives you the authority. The Holabird and Root case, the Pekin versus Wilson case, and in fact Judge Myerscough's recent opinion here in the Danner case gives the trial court and the reviewing court the ability to look beyond what are the titles, the bare allegations stated in the complaint. In fact, it says it's not appropriate for the trial court to wear judicial blinders and look only to what the plaintiffs have alleged. Because the plaintiffs, the booths, aren't going to allege that these actions were justified. The mannings have said these actions were justified, and in that way it's very similar to the Pekin v. Wilson case, which dealt with the self-defense exception to an intentional tort. The self-defense, the idea behind the self-defense exception is that there was a justification for the intentional act. There's no question here that the mannings intended to construct a gate. I thought the policy in the Pekin case you're citing specifically said that self-defense was an exception. In other words, that was part of the contract. That was part of the contract of insurance. But we don't have that here. We do not have that here. But what we're arguing is that the duty to defend, the burden to establish a duty to defend, is very low. And the overriding principles of insurance construction and interpretation in Illinois suggest that if there is any uncertainty, any question of whether there is a potential for a claim to be proven that would bring it within the policy of insurance, then those questions have to be resolved in favor of the insured, in favor of coverage. And what we're arguing is that the affirmative defense is pled by the mannings, indicating a justification for denying an intent to interfere with these prospective economic advantages, indicating a lack of knowledge, even, regarding these prospective economic advantages, could potentially, as the proof and as the evidence develops in the underlying suit, and we're still in the discovery process in the underlying suit, as the case progresses, there may be something that the Booths ultimately are able to prove against the mannings. It's not intentional, but it's something else. And it would bring it within the coverage that is afforded by the State Farm policy. It is that potential that brings the mannings claim, or brings the mannings argument within the coverage afforded by State Farm. But it seems like you both agree, in order for the Booths to prevail in the underlying suit, they have to prove the intentional tort, correct? The way their complaint is worded at the present time, they have to prove that the mannings intended to interfere with the prospective economic advantage, and that there was no justification for their actions. Which is an intentional tort. As it is pleaded now, it is pleaded as an intentional tort. Well, haven't we established they have to plead an intentional tort, otherwise there's no theory of recovery for them. I think there is, and I believe Ms. Seymour acknowledged, that there is potentially a cause of action that could be stated, depending on how, again, the evidence... What would that cause of action be? That the mannings negligently constructed the gate, that they should have done better research to determine whether they were... Can you get purely economic damages under a negligence theory? No, you cannot. But the question of whether or not damages can ultimately be proven that are subject to indemnification under the policy is not a question that's before this court now. There may potentially be damages that the Booths have suffered as a result of the erection of the gate that are not purely economic damages. And I believe Judge Rosary spoke to that specifically and said, whether or not there are damages other than pure economic damages that are proven remains to be seen, and that's a question for another day. The duty of an insurer to indemnify an insured, unquestionably, is a much narrower duty than a duty to defend. If there is a potential that the allegations before the trial court, and by allegations we're referring not only to the facts that are included and alleged in the complaint, but in the affirmative defenses and in the other known facts that the judge is aware of, he is allowed to consider those things. And if there's something in there that he believes will potentially put this claim within the boundaries of that insurance policy, then he's obliged under the precedent of Illinois courts to resolve that question in favor of insurance. Not indemnification, but simply a duty to defend. And the question then of whether there are damages that are ultimately proven at the end of the day are subject to indemnification under the policy is a question that is to be answered at the end of the day. And Judge Roseberry did not address that. And that was not an issue we put to him. Is it important that the Mannings did not know this was a public roadway? How does that figure in? It addresses the justification of the Mannings, the idea of an intentional... So if they're ignorant, they can get away with it. I don't think it's not that plain. You can't put it that simply. They weren't necessarily ignorant of the fact. They reasonably relied on the title work, the plat work, everything that was provided to them when they purchased this property. There was nothing in any of the documentation that was given to them that identified this is a dirt road. It's an old field road. Nothing that identified this old field road. It's two ruts across the property as a public road. Not paved, not graveled. It's two ruts across their property. And there was nothing known to the Mannings back when they put this gate up that suggested to them or gave them any reasonable expectation that this was anything other than an old field road on their private property and they were justified in erecting the gate, which refutes the allegations of the plaintiff's complaint that this was some intentional act meant to thwart a prospective economic advantage. Would it have been different if they had known it was a public road? Well, potentially, yes, because then their actions... would not have had any legal justification in erecting a gate or a fence system over a public road. At this point, the Mannings are able to argue and have argued and have suggested to the trial court that they were innocent actors in this. They did what they reasonably believed they could do and as a result of their justifiable actions, they've now been brought before the court in Pike County to answer to these allegations for potential damages that include an alleged loss in the fair market value of the property owned by the Booths. And ignorance is an innocent position. It's not ignorance of the law. It is... you know, the way this all came about, when the Mannings purchased the property, they received title work, there was a survey done, and nothing in there. You know, I think they're justified in relying on that information that's provided to them when you buy real estate. At the very end of the day, in the prior litigation, there was a plat, a survey of plat from 1864 that identified this particular roadway with enough specificity that the court was able to conclude, well, this was originally surveyed out as a public road, but this was hidden back in the old books from Pike County. To say the Mannings were ignorant of the existence of this 1864 plat and should have known that this was a public road, I think puts a burden on the Mannings that's not reasonable when they're relying on present-day information that's given to them when they buy the property, and they're doing what they think they have every right to do on their own private property. As a result, the neighboring property owner is claiming damages, which include the loss of use of his land, reduction in fair market value of his land, and the definition of property damage in the state farm policy, as written, has been subject to different interpretations by courts in Illinois, by courts outside of Illinois. The Mutlu case that was referenced by Ms. Seymour in her brief and in argument today adopts a very narrow construction of that definition, and the narrow interpretation of that definition, we would submit, is not consistent with the principles of insurance policy interpretation in the state of Illinois, which states that the duty to defend is broad. We're not here talking about a duty to indemnify for ultimate property damage. The role of a court in construing a policy of insurance is to ascertain and enforce the intentions of the parties. If there is an ambiguity in the policy as written, that ambiguity must be construed against the drafter of that policy, against state farm. State farm could have written that language in a way that would make absolutely clear that for property damage to only include a loss of use, if that loss of use is tied to a physical damage to the property, they could have drafted it in that way. They did not, and the way it is drafted leaves a question that is open to more than one reasonable interpretation. We believe Judge Roseberry, in conclusion, looked at the totality of the circumstances before him, including the allegations of the complaint, including the allegations of the affirmative defenses, the other facts that were known and available to him at the time, and that he was right to consider all of that when a case was before him on a motion for judgment on the pleadings. And he correctly concluded that there is a potential in this matter for a claim to be stated for property damage to be alleged and proved that would bring this into the state farm policy, and for that reason, he found there was a duty to defend. And we ask that Judge Roseberry's decision be affirmed. You agree our standard of review is to a no vote, correct? Absolutely, absolutely. Counsel, for rebuttal. Just briefly, a couple of points. On the issue of the property damages interpretation, the cases cited by the defendants for their position that the terms are ambiguous and subject to more than one interpretation, in particular, the Gibson v. Farm Family case, which was out of Maine, actually provided no analysis whatsoever on the interpretation of the definition, which was identical to that issue in this case. They simply said, we construe the policy against the insurer, and without finding any ambiguity, they said that it also covered loss of use without accompanying physical damage. And the first district decision in Mootla, as well as the third district decision in Rock, I think provided more thorough analysis and actually considered the way that the terms are written and found that there was only one reasonable interpretation of the policy definition, and that is that it requires physical damage because it says the including loss of use of this property obviously refers back to the physically damaged or destroyed property. On the issue of the affirmative defenses, the defendants' affirmative defenses may eventually defeat the plaintiff's claim, but they don't transform the case and the plaintiff's cause of action into some unstated cause of action. I can't stand up here and honestly say that there's absolutely no cause of action that could ever be pled that would trigger a duty to defend, but based on what the booth, the underlying plaintiffs in this case have pled, is one cause of action that requires them to prove that the mannings acted with a specific intent to interfere with that business relationship. If they prove that, then they prove that there's no coverage in this case. If they don't prove it, they don't prove their case. They're simply, the allegations, even if you consider the affirmative defenses, do not bring this case within the coverage and there is simply no duty to defend on State Farm. Are there no other questions? Thank you. The court will take the matter under advisement.